596 P.2d 48

**BOARD OF EDUCATION OF TEMPE UNION HIGH SCHOOL DISTRICT OF MARICOPA COUNTY, Appellant,**

v.

**R. Michael LAMMLE, Appellee.**

**No. 1 CA–CIV 3958.**

Court of Appeals of Arizona,
Division 1,
Department B.

April 10, 1979.

Rehearing Denied May 22, 1979.

Review Denied June 12, 1979.

---

Charles F. Hyder, Maricopa County Atty., by Q. Dale Hatch and John R. Mayfield, Phoenix, for appellant.

Porter, Stahnke, Phillips, Kempton & Tobler by James R. Phillips, Tempe, for appellee.

## OPINION

JACOBSON, Judge.

The basic issue raised by this appeal is whether the continued absences because of illness of a continuing teacher is good cause to terminate his teaching contract.

This appeal by the Board of Education of Tempe High School, District of Maricopa (Board) is from a judgment of the Superior Court of Maricopa County reinstating appellee R. Michael Lammle as a continuing teacher following a judicial review of his dismissal by the Board. The facts are not in material dispute.

Mr. Lammle was first hired by the Tempe High School District in 1972. In the school year 1973–74 he was voted "Teacher of the Year." Apparently his teaching career was smooth until the school year 1975–76. During that year, he contracted flu which developed into viral pneumonia. He was absent during this school year a total of 62 days out of a school year of approximately 180 days. These absences required that substitute teachers be hired to replace Mr. Lammle.

As a result of these absences, a conference was held at the end of the school year between Mr. Lammle, the principal, the district superintendent, the personnel director, and a representative of the teachers' associ-

ation. Mr. Lammle's absences and illness were discussed. A memorandum of that meeting in the form of a letter to Mr. Lammle dated May 27, 1976, was prepared which in pertinent part stated:

"The main concern expressed by the administration was your 62 days of absence for the 1975–76 school year. During your absences considerable concern was expressed by students, parents, and departmental members. It was felt that the education opportunities for students could not be accomplished in your classes with the large number of substitute teachers required during your absences. "The following course of action concerning future absences for the 1976–77 school year was recommended:

"(a) After using the regular twelve (12) days sick and personal leave, the administration will consider the need to recommend to the Tempe Union High School Board of Education, that you be placed on medical leave.

"(b) If a medical leave is approved, the leave will be for a period of time determined by a medical doctor recommended by the Tempe High School District administration. The medical doctor will approve your return to the classroom.

"(c) During the period of medical leave or leaves a qualified substitute will be employed to meet the educational needs of those students assigned to your classes in the area of science."

Mr. Lammle was given a teaching contract for the 1976–77 school year. He was at that time qualified as a "continuing teacher." [1]

During the first 35 working days of the school year 1976–77, Mr. Lammle was absent 15 days. These consisted of missing 2 days in August (the first two days of school), 7 days in September and 6 days in October. The school administration, because of these absences, notified the Board, which voted on October 11, 1976, to start dismissal proceedings against Mr. Lammle. Mr. Lammle was given written notification of the Board's action and on October 21, 1976, Mr. Lammle requested a formal hearing pursuant to A.R.S. § 15–262. Pursuant to that statute, a three member commission was duly impaneled and held a hearing on November 19, 1976. Mr. Lammle and the Board were represented by counsel at that hearing.

Basically, the evidence presented by the Board at that hearing showed that Mr. Lammle's continued absences in the school year 1975–76 and at the start of the school year in 1976 caused a disruption of his class, was detrimental to the learning process of his students, and placed an added administrative burden on the school district. The Board also presented evidence that based upon a legal opinion of the Maricopa County Attorney's Office, it was unable to pursue the recommendation contained in the May 27, 1976 memorandum that Mr. Lammle be placed on medical leave. It was the opinion of the Maricopa County Attorney's Office that such a recommendation amounted to a dismissal and that the request for medical leave must originate from Mr. Lammle. Mr. Lammle never requested medical leave.

Mr. Lammle did not attempt to rebut the Board's evidence that his repeated absences were detrimental to his students. However, through medical reports, he did establish that his absences were medically related; that, although Mr. Lammle suffered from hemophilia, this condition did not render him unable to perform his duties or make him more susceptible to infection; and that his medical condition at the time of the hearing was stable. In addition, Mr. Lammle presented testimony, through teaching associates acquainted with him prior to 1975, that he was considered a qualified teacher and educator.

---

1. A.R.S. § 15–251, under the teacher tenure law, provides in part:

"2. 'Continuing teacher' means a certificated teacher who is employed under contract in a school district as a full-time classroom teacher . . . and whose contract has been renewed for his fourth consecutive year of such employment in the district."

Based upon this evidence, the commission voted two to one to recommend that Mr. Lammle be dismissed from his teaching position. This recommendation was based upon a finding of fact: "that Michael Lammle was unable to perform the teaching duties as assigned as evidenced by the excessive absences for the 1975–76 school year and the 1976–77 school year as indicated in the Statement of Charges." The member of the commission voting against this dismissal did so based on "his belief that the District had an ethical responsibility to pursue the possibility of medical leave with Mr. Lammle prior to dismissal proceedings." The Board followed the commission's recommendation and dismissed Mr. Lammle on December 20, 1976.

Based upon the record before the commission,[2] the superior court ordered Mr. Lammle reinstated, and gave him judgment for back pay from December 20, 1976. On a motion for rehearing, the trial judge explained the basis of his ruling:

"I felt that Mr. Lammle was a tenured teacher, and that had he been discharged prior to becoming tenured for the same kind of reasons, that it would have been absolutely appropriate, but once he became tenured, it seemed to me that the burden was to show that he was either incapable of doing his job or that he engaged in misconduct of some kind. ". . . he wasn't guilty of misconduct. He had been ill, his illness was not directly related to something that made him unfit to teach. What you had was a problem of someone who just missed an awful lot of time and probably will take a lot of time in the future . . . and has gotten sick in a way that did not demonstrate to me that he was incapable of teaching in the future."

Both parties agree that a continuing teacher may be dismissed for "good cause." *See Kersey v. Maine Consolidated School District No. 10*, 96 Ariz. 266, 394 P.2d 201 (1964); *Williams v. School District No. 40 of Gila County*, 4 Ariz.App. 5, 417 P.2d 376 (1966). The Board contends that what constitutes good cause is for the Board's determination and that determination is only subject to judicial review for arbitrariness or capriciousness. A corollary to the Board's contention is that if its finding of good cause is not arbitrary or capricious, the court cannot substitute its determination for that of the Board.

Mr. Lammle, on the other hand, contends that the Board's offering him a contract for the school year 1976–77 constituted a waiver of his absences during the school year 1975–76. From this premise he argues that merely missing 15 days in the school year 1976–77 (school policy allows 12 days of sick leave during a school year) does not constitute good cause for dismissal and thus the Board's action in dismissing was arbitrary and capricious. In addition, Mr. Lammle contends that as a general proposition, absences due to valid medical reasons, without a showing that the absences will continue in the future, cannot constitute good cause for dismissal.

In order to answer these various contentions, it is necessary to delineate the scope of judicial review of decisions of a board of education dismissing a continuing teacher. It is generally recognized that in most areas of school district affairs, the legislature has delegated to the school board the authority to control those affairs and judicial review of the school board's action is limited to a determination of whether the board's action was fraudulent, arbitrary or capricious. *Tucson Public Schools, District No. 1 of Pima County v. Green*, 17 Ariz.App. 91, 495 P.2d 861 (1972); *Kelly v. Martin*, 16 Ariz. App. 7, 490 P.2d 836 (1971).

In the area of continuing teachers, the scope of judicial review of school boards' actions is not so clearly limited. Thus, *Williams v. School District No. 40 of Gila County, supra*, speaks of the co-existing power of school boards and the superior courts to view the evidence. However, this case and

---

2. At the time of the hearing before the superior court, the trial judge allowed additional testimony to be presented. However, the court subsequently held that such additional evidence did not come within the scope of A.R.S. § 41–785 and ordered it excluded.

others (see *Kersey v. Maine Consolidated School District No. 10, supra* ) dealing with dismissals of continuing teachers were decided under a judicial review statute (formerly A.R.S. § 15–255, repealed, Laws 1974, ch. 60, § 2) which allowed the superior court to "hear and determine the matter *de novo.*" (Emphasis added.)

In 1974, A.R.S. § 15–264 (the successor to A.R.S. § 15–255) was enacted which provides, in part:

"The decision of the governing board may, on appeal of a continuing teacher, be reviewed by a court of competent jurisdiction in the same manner as the decision made in accordance with the provisions of § 41–785."

A.R.S. § 41–785 is part of the statutory scheme dealing with the Personnel Board functions governing public employees. In addition to limiting the grounds which the dismissed employee may urge in superior court, A.R.S. § 41–785(F) provides in part that: "The court shall review the hearing on the basis of the transcript and exhibits," with certain exceptions not pertinent here.

Based upon this change in the law and the abolishment of a trial *de novo* in the superior court, we are of the opinion that the judicial review of a dismissal of a continuing teacher is governed by the same rules which govern judicial review where the review in the superior court is limited to review of a record produced before an administrative agency. Illustrative of this scope of judicial review is *Arizona Department of Economic Security v. Lidback*, 26 Ariz.App. 143, 145, 546 P.2d 1152, 1154 (1976):

"As a hearing was held by the Department, the superior court did not conduct a trial de novo. The appeal therefore was upon the record. Consequently, the court could not substitute its own discretion for that exercised by the Department. It could only decide whether the Department erred in its interpretation of the law or whether the administrative action was arbitrary, capricious or involved an abuse of discretion."

We therefore hold in the context of an appeal by a continuing teacher who has been dismissed following a hearing and a determination by the governing board that good cause for the dismissal exists, the superior court may not substitute its determination of good cause for that of the board and is limited to a determination of whether reasonable evidence supports the board's finding, and if so, whether the determination that good cause exists is arbitrary, capricious or an abuse of discretion.

At this juncture it is important to define "good cause." In the context of the dismissal of a continuing teacher, it means a cause which bears a reasonable relationship to a teacher's unfitness to discharge the duties assigned or is in a reasonable sense detrimental to the students being taught. *See Jepsen v. Board of Education of Community High School District No. 307*, 19 Ill.App.2d 204, 153 N.E.2d 417 (1958); *Powell v. Board of Trustees of Crook County School District No. 1*, 550 P.2d 1112 (Wyo.1976). Moreover, in determining whether a decision finding good cause based upon specific facts is reasonable, the decision must be measured by a standard set by reasonable people, "bearing in mind that such a standard may permit a difference of opinion on the same subject." *Kelly v. Martin, supra*, 16 Ariz.App. at 11, 490 P.2d at 840.

With this scope of review by the superior court and the definitional background in mind, we turn to Mr. Lammle's contention that the offer and acceptance of a contract for the school year 1976–77 constituted a waiver of the right to consider absences occurring in the school year 1975–76.

In support of this contention, Mr. Lammle relies on *Flowing Wells School District v. Stewart*, 18 Ariz.App. 19, 499 P.2d 750 (1972). However, as a footnote to that opinion points out, the implied waiver referred to does not preclude the Board from terminating the renewal contract if the conduct impliedly waived is repeated. This is made clear in *Tsakiris v. Phoenix Union High School System*, 18 Ariz.App. 416, 419, 502 P.2d 1093, 1096 (1972) where we stated:

"This is not to say that appellant's slate has been wiped clean by the rehiring so that prior incompetency or acts of misconduct may not be considered *in conjunction with* incompetency or misconduct demonstrated in the future work of the appellant." (Emphasis in original.)

*See also Palicka v. Ruth Fisher School District No. 90 of Maricopa County*, 13 Ariz. App. 5, 473 P.2d 807 (1970).

Applying this principle here, when the absences which were the subject of a meeting in May, 1976, were repeated at the start of the school year in 1976, the Board could properly consider the past conduct of Mr. Lammle in reaching its conclusion that good cause existed for the dismissal.

 This brings us to the determinative issue on appeal: Whether the trial court properly determined that the Board's finding of good cause for dismissal without a specific showing that the absences would continue in the future was arbitrary, capricious or an abuse of discretion.

The cases cited by both parties are not particularly helpful under the specific facts of this case. They range from the dismissal for one unexcused absence (found not to be good cause), *Fox v. Board of Education of Doddridge County*, 236 S.E.2d 243 (W.Va. 1977), to the case of the permanent physical condition which medically will produce above normal absences in the future (held to be good cause for dismissal), *Riggins v. Board of Education of San Diego Unified School District*, 144 Cal.App.2d 232, 300 P.2d 848 (1956), to the temporary medical condition (pregnancy, held not to afford good cause for dismissal), *Cerra v. East Stroudsburg Area School District*, 450 Pa. 207, 299 A.2d 277 (1973).

This case falls somewhere in between, as the evidence shows that Mr. Lammle's medically related absences have continued over a rather extended period of time but there is no stated medical testimony that these absences will continue in the future (although, as the trial court found, they will probably recur in the future). We agree with the trial court that this is a close case, and had we been on the Board, we well may have voted against dismissal. This, however, does not make the Board's decision to dismiss unreasonable, arbitrary or capricious.

Given the extended nature of Mr. Lammle's absences in the past and the undisputed evidence that these absences adversely affected his classes and students, we are simply unable to say, as a matter of law, that the Board's looking at Mr. Lammle's past conduct was unreasonable in at least forecasting future conduct in this area.

Having reached this conclusion, the decision of the Board, which Board by statute is given the primary responsibility in this area, must stand.

The judgment of the trial court is reversed and the Board's decision of dismissal is reinstated.

OGG, C. J., and SCHROEDER, P. J., concur.