808 P.2d 297

**Richard WOERTH,**
**Plaintiff–Appellant/Cross–Appellee,**

**v.**

**CITY OF FLAGSTAFF; Dean Treadway and Barbara Jean Treadway, husband and wife, in their individual and official capacity; Frank Abeyta and Margaret Abeyta, husband and wife, in their individual and official capacity, Defendants–Appellees / Cross–Appellants.**

**No. 1 CA–CV 88–553.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 7, 1990.

Review Denied April 23, 1991.

■■■

---

Law Office of Lance F. Jacobs by Lance F. Jacobs, Scottsdale, for plaintiff-appellant/cross-appellee.

Mangum, Wall, Stoops & Warden by Robert B. Van Wyck, Flagstaff, for defendants-appellees/cross-appellants.

## OPINION

McGREGOR, Judge.

Appellant/cross-appellee Richard Woerth (Woerth) appeals from summary judgment in favor of appellees/cross-appellants City of Flagstaff (Flagstaff), Dean Treadway (Treadway) and Frank Abeyta (Abeyta) (collectively, defendants) on Woerth's claims for breach of employment contract, breach of the implied covenant of good faith and fair dealing, wrongful discharge, and intentional interference with contract.

Defendants cross appeal from the trial court's denial of their motion for attorneys' fees.

## I.

Flagstaff hired Woerth as a firefighter on June 6, 1984. By January 1986, Woerth had attained the status of permanent employee in Flagstaff's classified service.

On January 8, 1986, federal prosecutors unsealed a criminal indictment alleging that Woerth, individually and in conspiracy with others, had possessed cocaine with the intent to distribute it and had distributed it. Specifically, the indictment alleged that Woerth had distributed a small usable quantity of cocaine to two Flagstaff firefighters on two occasions in the summer of 1985. As a result of the indictment, Treadway, Flagstaff's fire chief, and Abeyta, Flagstaff's city manager, placed Woerth on suspension with pay. Flagstaff then conducted an internal investigation of the possible distribution and use of cocaine within the Flagstaff fire department.

Basing its decision upon the results of the internal investigation, Flagstaff decided to discharge Woerth. On February 3, 1986, Abeyta provided Woerth with written notice of intent to dismiss on the grounds that Woerth violated several Flagstaff personnel rules by possessing, using, distributing and/or arranging for the distribution of illegal drugs to firefighters and others in violation of state and federal law. Woerth requested and received a pre-termination hearing. He failed to convince Flagstaff to retain him, and Abeyta sent Woerth written notice of termination effective February 11, 1986.

Woerth appealed Abeyta's decision to the Flagstaff Personnel Board (the Board).[1] The Board conducted an adversarial hearing at which Flagstaff and Woerth presented evidence. The Board found that Flagstaff established the following facts by a preponderance of the evidence:

1. During the summer of 1985, Richard Woerth possessed, used, and distributed cocaine to two other firefighters at the O'Shanigan's bar in Flagstaff.

2. During the summer of 1985, Richard Woerth possessed and used cocaine in Page, Arizona.

3. Early in 1984 Richard Woerth used and possessed cocaine at Paul Zanzucchi's house in Flagstaff, Arizona, at a time prior to entering City employment.[2]

4. At a time determined by the evidence to be immediately prior to entry on [sic] City employment, but during the examination and selection process, at Matt Zanzucchi's house in Flagstaff, Arizona, Richard Woerth possessed and used cocaine.

5. In approximately December 1984 Richard Woerth purchased and possessed a saleable quantity of cocaine for approximately $1800–$2000 at Matt Zanzucchi's house.

The Board determined that Woerth's conduct violated Flagstaff personnel rules because it discredited and was detrimental to the fire department and recommended that Abeyta should sustain the decision to dismiss Woerth. In a letter dated December 9, 1986, Abeyta and Treadway informed Woerth that they concurred with the Board's recommendation and would not reinstate Woerth as a Flagstaff firefighter.

Woerth subsequently filed a complaint in superior court against Flagstaff for breach of employment contract, breach of the implied covenant of good faith and fair dealing, and wrongful discharge, and against Treadway and Abeyta for intentional interference with contract. In a detailed minute entry, the trial court explained its reasons for granting summary judgment in favor of defendants. Applying an administrative review standard, the trial court held that,

---

1. Pursuant to Flagstaff personnel policies, the Board "is responsible for determining that the employee's rights have been protected and that proper procedures have been followed in matters concerning the dismissal, demotion or suspension of the employee." Flagstaff, Az., Ordinance No. 1116, Section 105.A (1981).

2. The Board specifically stated that, although Woerth admitted to pre-employment use of cocaine, that conduct did not affect the Board's recommendation.

because the Board's findings and recommendation were not arbitrary, capricious, or an abuse of discretion, Flagstaff was entitled to judgment as a matter of law on Woerth's breach of contract claim. The court also found that no material disputed facts related to the claim for breach of the implied covenant of good faith and fair dealing or the claim for wrongful discharge. Finally, the court held that Woerth failed to identify material disputed issues of fact related to his claim against the individual defendants for intentional interference with contract.

The court, however, denied defendants' request for attorneys' fees, stating that "[w]hile the Court would ordinarily be predisposed to grant attorney's fees in this matter, I feel it would be a hardship on the Plaintiff to pay even a symbolic amount."

Woerth filed a timely appeal, and defendants filed a timely cross-appeal. We have jurisdiction pursuant to A.R.S. §§ 12–120.-21.A.1 and –2101.B.

## II.

Woerth claims that the trial court erred in granting summary judgment because material facts remain in dispute. When reviewing a summary judgment on appeal, we view the facts and reasonable inferences in a light most favorable to the party against whom the trial court granted summary judgment. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990); *Cecil Lawter Real Estate School v. Town & Country Shopping Center Co.*, 143 Ariz. 527, 533, 694 P.2d 815, 821 (App.1984). If no genuine issues of material disputed facts remain and the moving party is entitled to judgment as a matter of law, we must affirm the decision

of the trial court. *United Bank*, 167 Ariz. at 195, 805 P.2d at 1016.

■ In Arizona, employment is presumed "at-will" in the absence of a definite term of employment. Arizona recognizes three exceptions to the employment at-will doctrine: (1) the "personnel policy manual" exception; (2) the public policy exception; and (3) the good faith and fair dealing exception. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 375–76, 710 P.2d 1025, 1030–31 (1985). We examine each in turn.

### A. *Breach of Contract*

The parties agree that Flagstaff's personnel policies constituted a contract of employment between Woerth and Flagstaff and that the personnel policies governed that contractual relationship. The parties also agree that, as a non-probationary classified employee, Woerth could be discharged only "for cause." [3] Woerth does not dispute that Flagstaff complied with the dismissal procedures set out in the Flagstaff personnel policies. *See* Flagstaff, Az., Ordinance No. 1116, Section 105 (1981). Woerth argues, however, that the trial court erred by applying an administrative review standard to the Board's factual findings and to its determination that cause existed for Woerth's discharge. We disagree.

■ Municipal personnel boards, merit boards, and civil service commissions are not judicial bodies, but administrative bodies performing judicial functions. *In re Farish*, 18 Ariz. 298, 303–304, 158 P. 845, 847–48 (1916). The decision of an administrative body is final unless a statute authorizes an appeal.[4] *See Arizona Department of Economic Security v. Holland*, 120 Ariz. 371, 372, 586 P.2d 216, 217 (App.

---

3. Under the Flagstaff personnel policies, the tenure of classified employees who have completed their probationary period is secure during "acceptable conduct and satisfactory performance of their duties and responsibilities." Flagstaff, Az., Ordinance No. 1116, Section 412.B (1981).

4. For example, the Arizona Administrative Review Act, A.R.S. §§ 12–901 through –914, authorizes judicial review of administrative decisions, but excludes those rendered by "any political

subdivision, municipal corporation, or agency thereof." A.R.S. §§ 12–901.1 and –902. The County Employee Merit System, A.R.S. §§ 11–351 through –356, authorizes judicial review of merit commission decisions pursuant to the Administrative Review Act. A.R.S. § 11–356.D. Likewise, State Personnel Board decisions are subject to limited judicial review. *See* A.R.S. § 41–785.D.

1978). No statute authorizes an appeal from municipal personnel board decisions. Nevertheless, under appropriate circumstances, an employee dissatisfied with a city personnel board decision may bring a special action pursuant to Rule 1, Rules of Procedure for Special Actions. *See City of Tucson v. Mills*, 114 Ariz. 107, 109, 559 P.2d 663, 665 (App.1976); *see also Keith v. Civil Service Board*, 57 Ariz. 85, 89, 111 P.2d 57, 59 (1941) (use of writ of certiorari to obtain review of city civil service board decision).

■ The scope of judicial review of city personnel board decisions, however, is limited:

The superior court, in reviewing an administrative determination, may only decide whether the administrative action was illegal in that it was arbitrary, capricious or involved an abuse of discretion. Only where the administrative decision is unsupported by competent evidence may the trial court set it aside as being arbitrary and capricious. The court should neither consider the propriety of the Commission's findings nor substitute its judgment for that of the Commission.

*Mills*, 114 Ariz. at 111, 559 P.2d at 667 (citations omitted).

■ However Woerth chose to label his claim, in reality he sought to have the trial court or a jury determine whether Flagstaff had cause to discharge him. The Board, however, made factual findings related to Woerth's actions and decided that Woerth's actions constituted cause for his discharge. Under those circumstances, the only remedy available to Woerth to challenge the propriety of the Board's decision is by special action.[5] Therefore, although Woerth denominated this action an original rather than a special action, the trial court properly reviewed Woerth's breach of contract claim under the administrative review standard. *See Mills*, 114 Ariz. at 111, 559 P.2d at 667.

The record provides competent evidence to support the Board's factual determinations and its conclusion that Woerth's activities constituted cause to dismiss Woerth. Indeed, Woerth does not contend on appeal that the Board's factual findings were unsupported by competent evidence. Absent that showing, neither the trial court nor this court will substitute its judgment for that of the Board.

■ Woerth also contends that Flagstaff breached his employment contract by violating the personnel policy that promises to provide all employees with uniform treatment in disciplinary matters. His argument relies upon the contention that two other firemen who used cocaine on more than one occasion each received a 30-day suspension, whereas Flagstaff discharged Woerth for his cocaine involvement.

The Board, however, fully considered the facts upon which Woerth's argument relies.[6] Flagstaff presented substantial evidence at the Board hearing demonstrating that Woerth engaged in repeated and consistent conduct involving his own use of cocaine and his distribution of cocaine to other firefighters. In contrast, the other two firefighters admitted to use of cocaine on isolated occasions and did not distribute cocaine to other firefighters. No policy requires that Flagstaff impose identical discipline for related, but not identical, conduct. Once again, we will not substitute our judgment as to the appropriate discipline for the activities in which Woerth engaged for the judgment of the Board.

■ Finally, Woerth contends that Flagstaff breached his contract of employment by violating the implied-in-law covenant of good faith and fair dealing.[7] The

---

5. Were we to hold otherwise, we would create the anomalous situation whereby Woerth could rely for his breach of contract action upon the Flagstaff personnel policies but could disavow the very contract on which he relies for purposes of defining the body entitled to determine whether cause existed for his discharge.

6. At the time of the Board's hearing, the two firefighters with whom Woerth compares himself had not yet been disciplined. Neither party disputes that each of those firefighters eventually received a 30-day suspension without pay.

7. Although Woerth refers to his claim for breach of the covenant of good faith and fair dealing as a claim sounding in tort, Arizona has

implied covenant of good faith and fair dealing entitled Woerth to receive the benefits of his agreement with Flagstaff:

> [T]he implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into. The denial of a party's right to those benefits, whatever they are, will breach the duty of good faith implicit in the contract. Thus, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to.

*Wagenseller*, 147 Ariz. at 385, 710 P.2d at 1040.[8] Woerth received the benefits of his agreement; Flagstaff followed the procedures defined in and required by the personnel policies and discharged him for cause.

We conclude that the trial court correctly determined that the findings and recommendations of the Board were not arbitrary, capricious, or an abuse of discretion and affirm the judgment in favor of Flagstaff on Woerth's breach of contract claim and breach of the implied covenant of good faith and fair dealing claim.

### B. *Wrongful Discharge*

■■■ Woerth further alleged that Flagstaff discharged him for reasons that violate public policy, thereby giving rise to a claim for wrongful discharge sounding in tort. In *Wagenseller*, our supreme court held that such an action arises if an employer discharges an employee for doing that which the law requires or refusing to do that which the law forbids. *Wagenseller*, 147 Ariz. at 377–78, 710 P.2d at 1032–33. The court stated that

> [f]iring for bad cause—one against public policy articulated by constitutional, statutory, or decisional law—is not a right inherent in the at-will contract, or in any

other contract, even if expressly provided. Such a termination violates rights guaranteed to the employee by law and is tortious.

*Id.* at 381, 710 P.2d at 1036 (citations omitted).

Although Woerth refers to the tort of wrongful discharge, neither in his complaint nor in this appeal does he define the public policy violated by his discharge. He made no showing that Flagstaff discharged him because he acted in compliance with the law or because he refused to act in a manner that would violate the law. We hold that Woerth failed to state a claim for wrongful discharge.

### III.

■■■ In his final claim, Woerth alleged that Abeyta and Treadway intentionally and tortiously interfered with his contract of employment. A plaintiff must prove four elements to establish the tort of interference with employment contract:

> (1) The existence of a valid contractual relationship or business expectancy;
>
> (2) knowledge of the relationship or expectancy on the part of the interferer;
>
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
>
> (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Wagenseller*, 147 Ariz. at 386, 710 P.2d at 1041. Additionally, the plaintiff must prove that the defendant's actions were improper as to motive or means. *Id.* at 388, 710 P.2d at 1043.

■■■ To avoid summary judgment, therefore, Woerth must demonstrate the material facts sufficient to support an inference that the defendants' interference with his contract, if established, resulted

---

consistently refused to recognize a tort action for breach of the implied covenant in the employment contract context. *See Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 385–86, 710 P.2d 1025, 1040–41 (1985). We therefore limit our analysis to Woerth's potential contract claim.

**8.** For example, the covenant protects an employee from discharge because his employer wishes to avoid the payment of benefits the employee has already earned, such as sales commissions. *Wagenseller,* 147 Ariz. at 385, 710 P.2d at 1040; *see Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977).

from improper motives or actions. Woerth could not sustain his burden by relying upon "[m]ere speculation or insubstantial doubt" regarding the material facts. Rather, Woerth had to show that the evidence or reasonable inferences therefrom would allow a jury to resolve the material issues in favor of either party. *United Bank of Arizona v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

Woerth failed to make the required showing. The facts upon which he relies to raise material issues of fact as to the improper motives of Treadway and Abeyta are undisputed. After Flagstaff discharged Woerth, a man named Billy Weldon testified in a deposition that he, not Woerth, distributed cocaine to two other firefighters in O'Shanigan's bar. That testimony was contrary to the Board's factual finding that Woerth provided the cocaine to the firefighters. Treadway and Abeyta concede that, prior to the Board hearing, a Flagstaff city attorney advised Weldon's attorney that if Weldon admitted under oath that he was involved in the distribution of cocaine, he might face prosecution under state law. Woerth, however, provided no evidence linking Treadway or Abeyta with the advice provided by the Flagstaff city attorney. Moreover, we find nothing improper in the city attorney's decision to warn Weldon that anything he said under oath could be used in subsequent criminal proceedings. Finally, we cannot infer the presence of an improper motive related to the decision to *discharge* Woerth from Treadway and Abeyta's refusal to *reinstate* Woerth after Weldon's purported admission.

Ordinarily the question of improper action or motive is one of fact and not of law. We can decide the issue as a matter of law, however, where no evidence of improper action or motive appears in the record. *Lindsey v. Dempsey,* 153 Ariz. 230, 233, 735 P.2d 840, 843 (App.1987). No evidence of record supports any reasonable inference of improper motivation. Therefore, we find that the trial court did not err in granting summary judgment to Treadway and Abeyta.

## IV.

Defendants cross appeal from the trial court's denial of their request for attorneys' fees. They assert that the trial court abused its discretion in finding that an award of attorneys' fees would impose an undue hardship on Woerth, because no evidence of record supports that finding.

Woerth correctly maintains that the party requesting an award of attorneys' fees pursuant to A.R.S. § 12–341.01.A has the burden of proving his entitlement to such an award. *See Associated Indemnity Corporation v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985); *Grand Real Estate v. Sirignano,* 139 Ariz. 8, 14, 676 P.2d 642, 648 (App. 1983). We disagree, however, with Woerth's further assertion that defendants failed to sustain their burden of proof.

Generally, the party asserting a claim for relief has the burden of proving the facts essential to his claim. *See Yeazell v. Copins,* 98 Ariz. 109, 116, 402 P.2d 541, 546 (1965); *Palicka v. Ruth Fisher Sch. Dist. No. 90, Maricopa Co.,* 13 Ariz. App. 5, 9, 473 P.2d 807, 811 (1970). When a claim requires proof of a negative allegation, i.e., that the case does not fall within an exception to the general rule, the burden of proving the negative allegation remains with the party who bears the burden of establishing his claim. *Southwest Cotton Company v. Ryan,* 22 Ariz. 520, 533, 199 P. 124, 129 (1921); *see Harvey v. Aubrey,* 53 Ariz. 210, 213, 87 P.2d 482, 483 (1939). Although the burden of proof never shifts, however, the burden of coming forward with evidence may shift. *Palicka,* 13 Ariz.App. at 9, 473 P.2d at 811; *Harvey,* 53 Ariz. at 214, 87 P.2d at 483. When proof of a negative assertion lies "peculiarly within the knowledge of the adverse party," the burden of coming forward with evidence shifts to that party. *Southwest Cotton,* 22 Ariz. at 533, 199 P. at 129; *Healy v. Coury,* 162 Ariz. 349, 354–55, 783 P.2d 795, 800–01 (App.1989); *see also G.E.J. Corporation v. Uranium Aire, Inc.,* 311 F.2d 749, 751 (9th Cir.1962) (applying Arizona law).

Among the factors that a trial court should consider in deciding whether to award attorneys' fees is whether assessing fees against the unsuccessful party would cause undue hardship. *Associated Indemnity,* 143 Ariz. at 570, 694 P.2d at 1184; *Grand Real Estate,* 139 Ariz. at 14, 676 P.2d at 648. In most cases, proof related to that factor lies peculiarly within the knowledge of the party asserting financial hardship. Therefore, although the party requesting fees has the burden of proving his entitlement to an award of fees, the party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship. *See Southwest Cotton,* 22 Ariz. at 533, 199 P. at 129; *G.E.J. Corporation,* 311 F.2d at 751.

The only reference of record to support Woerth's contention that he was financially unable to pay a fee award came from the unsworn and unsupported assertions of his attorney in memoranda filed with the court. Defendants argue that these assertions are insufficient to raise the issue of financial hardship and that Woerth must come forward with affidavits or testimony. We agree.

Unsworn and unproven assertions of counsel in memoranda are not facts admissible in evidence. *Cf. Prairie State Bank v. I.R.S.,* 155 Ariz. 219, 221 n. 1A, 745 P.2d 966, 968 n. 1A (App.1987) (an unsworn and unproven assertion in memorandum is not fact); *Cimino v. Alway,* 18 Ariz.App. 271, 273, 501 P.2d 447, 449 (1972) ("mere assertions of fact made by counsel in his memoranda or brief are not entitled to consideration"). To raise the issue of undue hardship, therefore, Woerth was required to present specific facts by affidavit or testimony. He failed to do so.

### V.

For the foregoing reasons, we affirm the trial court's judgment in favor of defendants. We reverse and remand on the issue of attorneys' fees to permit the trial court to consider Woerth's claim of undue hardship in light of this opinion.

CLABORNE, P.J., and KLEINSCHMIDT, J., concur.